Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Good afternoon, counsel. Welcome to the Fifth Circuit. As you recall, this case Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. Echo. Sorry. I think we're, I think we're okay. I think it was an echo from the streaming. Okay. I have a white box in front of my screen. It says this meeting is being recorded now. The hosts are participating. I need to click on that. Yes, sir, Judge. The stream's being done for the law clerks and other people in chambers. We can just get rid of that message. Okay. Okay, sir. You can continue. Okay. As everyone will recall, this case was initially consolidated with a companion case against Mr. Selgas. Because of a death in the family of one of our counselors, this case was unconsolidated and placed on the docket for today. After we hear argument in this case, and without re-consolidating two cases, but in our liking, we will issue one opinion deciding both cases. So, unless you have any questions about that, we'll begin. Green has no objections, Your Honor. Mr. Rees-Sog. I have Mr. Green. Big crab. Big crab. Oh. If it's time for me to start, I will, Your Honor. Yes. Good afternoon. I am Larry be craft greens appellate counsel. I am here to argue for the reversal of his conviction. Due to the failure of the district court to instruct the jury on the quote essential ingredients of a defraud clause conspiracy made penal by 18 United States Code section 371. We claim that the district court committed error is failure to do so. And screws against United States in 1945 US Supreme Court case. Some public officials were charged with a federal crime. And the instructions given at trial omitted and quote essential ingredient. Here are the words of the court. And where the error is so fundamental. It's not to submit to the jury, the essential ingredients of the only offense on which the conviction could rest. We think it is necessary to note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial. Whatever the degree of guilt. Note those words, whatever the degree of guilt. Those charged with a federal crime are entitled to be tried by the standards of guilt, which Congress has prescribed. In this case, there are three primary groups of facts or events, which the prosecution relies upon to assert that green engaged in this conspiracy. The first set of facts that involved the filing by Tom service of the tax statements based on income denominated in gold coin. The second set of facts involved that involved green had some trust accounts, and he held during the years in question funds of service in his trust accounts. The third set of facts. This involves in 2014 when an IRS agent by the name of Daniels contacted green to discuss, you know, collection of services assess taxes. Now let me discuss these three areas. In reference to the tax statements, and the one that's important for this to be correct. Yes, Your Honor. My question is, because because you raised the complaint about several different jury instructions. Is there a specific one that you're arguing about right now or is it just generally all the ones you raise the complaint about. Well, there was a serious, I'd like to make the argument today about. I forgot what issue it is I have an issue where I address a number of I think four different jury instructions, but those jury instructions dealt with, you know, describing to the jury, what the functions of the IRS are, you know, the indictment in this case said that the functions of the IRS involved the ascertainment computation assessment and collection of taxes. Now the IRS can only act pursuant to the laws enacted by Congress. In this particular case, other than the general jury instructions with the court gave you know and describing or reframing or presenting to the jury. It's description of the indictment, it just mentioned those functions without descending to and informing the jury well this this is exactly what the IRS does when it ascertains taxes. This is exactly what the IRS can do when it's computing taxes. This is what the IRS can do when it's collecting taxes, you know, the instructions that I would like to see the court address. Council, let me ask you a question. Are you complaining that there is a, an affirmative misstatement of law and the instructions are you saying that a judge did not adequately shape the case or offer explanations. I'm not complaining about there's nothing that made my appellate brief that deals with what the court did instruct the jury on what I am complaining about is if there was, it has to be plain error problems because nobody made an argument about these instructions. But you know there were instructions would describe it you know in a bifurcated in a condensed fashion. The law that supports those four functions that this indictment complaint were were abridged by by green as the ascertainment of taxes computation of taxes collection of taxes, you know, they do. Did you propose an instruction to cover those matters. Yes, they were they were. Here's what happened, Your Honor. You know, I think it was, I forgot the exact date but it's somewhere on the eve of trial. Selma submitted a series of jury instructions have they weren't submitted by green. But you know, when, when argument came to you, when the charge conference came about, nobody, nobody said anything about these jury instructions. Now I've looked through those jury instructions, and the ones I'm arguing about on this appeal deal specifically with, you know, these four functions of the IRS what's the status of counsel, are you saying then that you're here on plain error. Yes, Your Honor, that is correct. Okay. Clear plain error. You know nobody made it at the charge conference, nobody brought these instructions, you know they all I can say is, well they were submitted I forgot the document number but you know on the eve of trial Selma submit they weren't even submitted by green. You know that they're in the file they're in the doc. There's a document number in the docket sheet for these instructions, but nobody made any argument about it. So, I am making a plain error. And I'm sorry, Mr. Mr McCray, I just want to be sure I'm understanding. Are you complaining that there was some instructions that should have been given by the court that the court didn't give, or is your complaint that there was some instructions which were offered up by the defendant, which the court refused to give. No, the court, they were brought up, Your Honor. Nobody made any argument about these requested instructions. And so I'm making a plain error. So then the court, so the court gave the instructions. No, no, no. Oh, okay. The court, you know the the the instructions and I think they're the record excerpts. You know I include the courts instructions in the record record excerpts are there about four or five pages long. I'm not making any complaint about the instructions of the court game. My complaint, it's plain error is simply based on this fact, even trial. These requested instructions were were submitted. They're in the record on this bill. However, at the charge conference. Nobody, nobody from the defense came along and said, Well, judge, you don't hear hear these instructions. You know, I'm making an argument. So all I'm saying is, is, well, they're, you know, in the record, you know, nobody argued them. You know, but I think that the court had a duty to, you know, look over the submitted instructions. And, you know, and consider the ones that were submitted, you know, even do that before the charge conference, you know, that's been my experience. Can you, what, what, what is the error in what was given the report to anything that was given to the jury that is just misstatement of law. No, no, your honor. This field doesn't deal with any of the given instructions. You know, I'm making no complaint about what the court said and the court followed the Fifth Circuit pattern instructions. What I am complaining about is there's been my experience I've defended others of these types of cases, you know, nobody ever gets around to, you know, descending to the particulars of a conspiracy to defraud and tells the jury. Well, these are the functions of the IRS. And then, you know, based upon the statutes, like a collection you know there's a couple of sections that the IRS is authorized to collect taxes. Counselor, you're, Mr. Green is a lawyer, as I understand the facts, himself uses his auto account to pay the bills for his client and run that on his face, it appeared to be a sham. I mean, when you go to the facts of this case. And you tell me that no one objected to what the jury was told. And I'm ready to see if what you're, where are you in your claims. Okay, well, you know, john green had minimal contact with the IRS. And my position is that there's got to be a case to say this, there's got to be an abridgment of the functions of the IRS, where there to be a conspiracy to defraud. Now, those four functions of the IRS were set forth the indictment and the court you know kind of briefly described them in the pattern instructions that were given to the jury. Now let's deal with this, what the courts talking about is the collection function of the IRS. Now let's do. Here's what the facts are in reference to the collection. The only collection activities that happened in this case, that can show that the IRS was engaged in the function of collecting taxes, you know, all the way up until 2014 nothing happened the IRS did nothing to collect the taxes. Now by the time that you know agent Daniels came along and contacted john green. Well that's in 2014. Now, the taxes for 98 through 2001. At that time, they had already been assessed the IRS can collect those taxes for a period of 10 years. Now when agent Daniels comes along in 2014 and contacts john green those years those those years 98 through 2001, the ability to collect those taxes had expired it was beyond the statute of limitations. Now that left for the collection purposes, only the taxes for 2002 and 2010. Now, you know, I think the jury needs to know, you know, when the government is concluding and arguments you know I've got the whole total amount, you know, and I wasn't there but you know I'm sure that they said, use this big figure well here's what Well, you know what they all amount to is only two years is less than the taxes for all the years, but the IRS could only at that stage when they first contacted green, the IRS could only collect for the two years. Now, in reference to those two years. The only thing that happened when agent Daniels came along and started communicating with john green, you know, the only evidence we got about what happened or primarily the letters. I think there was letters from from agent Daniels, and then there's letters back and forth between the two parties, including john green I think they were offered into evidence. However, if you take a look at those letters, there wasn't any phone conversations or what any face to face contact. The only thing we know about that, you know, activity of agent Daniels is the letters. And when you sit down and you read those letters, all john green does is say, well, you know, show me the assessments, you know, show me that this, this money is owed. Now, the jury needs to know what the IRS can do in reference to collecting taxes. And, you know, it's kind of odd that you charge a crime that is dependent upon what an agency can do legally, you know, can't do whatever it's not authorized to do, you know, the jury needs to be informed. Here are those functions. And the IRS does have the function of collecting taxes, but it does have an impact here in this situation. You know there was never any collection activities of the IRS prior to 2014, you know they make they made these assessment of these taxes. Mr. Green credit is this. Yes, Your Honor. You know I just hearken back to what those Supreme Court said in the screws case. You know we're not talking about, I think the screws case deals with something a little bit broader than just elements you know we we talked about elements. The Supreme Court talked about the essential ingredients. And I think the essential ingredients in a case like this include informing the jury about what you know to give the jury a description of what the IRS can do. And then they then they can know, well if it can do this, then they know what the IRS couldn't do, or you know what activities. Here's what the IRS can do, and this activity that the IRS complains about that was committed by the, the defendant didn't abridge that function. You know the, the, I maintain from the Porter case, you know, decided by this circuit that, you know, it's real important to know what the statutory functions are of a government agency. I'm not aware that you are. Are you making a latches argument that the IRS did not do what it should have done. Well, it's not necessarily a latches argument, Your Honor. What it is is that you hear the facts. You know the IRS. You know they were charged with were charged with, in this case, with impeding the functions of the IRS. And the IRS you know the the trial evidence showed, well the IRS didn't do anything about collecting the taxes that it claims that it is assessed against sell this for a number of years. It didn't do anything until 2014. Now when it came, come on, so john greens could couldn't have impeded the directly impeded the functions of the IRS in reference to collection, until that point in time, the IRS didn't do anything until 2014, all the way up from 2005 through. Didn't they spend some time. Well, I have this position to offer. You know the the IRS had some indication that, you know, the service was keeping money and john greens trust accounts. Well if it had, if it had that knowledge. Why, why did it act. Before the before 2014, it didn't do anything. Nobody. Okay. Thank you, Your Honor. Yes. May I please the court. My name is Terry Leo Malley and I represent the United States in this case, I'd like to begin by correcting a factual misrepresentation. In 2014, the IRS began trying to collect the circuses income taxes, at least as early as October of 2001, because that was the date that revenue officer Charles McLean was assigned to collect the taxes. He was unsuccessful. However, during that time, those taxes were assessed, and the circuses were set notice in demand for them. In fact, they had to have had the assessment and the notice in demand, or they could not have appealed the assessment to the tax court. Now, Mr. Green didn't become involved in this case until roughly 2005, and his first, I believe, representation of Mr selgus was in the tax court. When the circuses were challenging their tax assessments. Now those decisions were delivered by the tax court in 2005 and 2006, and this court affirmed the tax courts ruling in favor of the IRS. And it looks like 2007 and 2008. So, the IRS has been attempting to to collect their taxes, more or less since the moment, the IRS realized they hadn't paid them. Now, the green raises four issues on appeal, the first of which is foreclosed by this court's precedent and no one. And as to the jury instructions that Mr be craft has argued for, as judge Higginbotham noted he has no complaint about the instructions that were given. He just asked that these instructions that were not even brought to the attention of the court should have been given, and that it was plain error for the district court, not to give those instructions. Now those instructions were at best, unnecessary. And they were at worst, an inaccurate statement of the law. Now, Mr. Green's argument is also based on another false assumption, and that assumption is that a tax deficiency is even required for a, sorry, a conspiracy to defraud the IRS. It is not. And in fact, the actual elements, the agreement, the knowledge and intent to defraud, and the overt acts were more than adequately proved. During the 12-year conspiracy, Green deposited over $850,000 of the Selgas' income into his ayotas, and he paid out over $140,000 over the same period of time. He opened a new ayota when he believed that the government had found Selgas' money going into his ayota, but the government did not know that until it began the criminal investigation. Green also knew, or had learned, that he was under criminal investigation about the same time that he opened the new ayotas. Now, in 2006, Green assisted Selgas in filing a false amended return for MyMail, the partnership that Ms. Selgas and Mr. Selgas had partnership interest in. And he also calculated the false forms K-1 that vastly, vastly understated the amount of distributions to the partners because it was based on the frivolous theory of the constitutional dollar. Now, after that, knowing, of course, exactly what the distributions had been, and it was over a million dollars to Ms. Selgas, Green assisted, he drafted and then assisted the Selgas' in filing a 2005 text statement that was roughly 23 pages of explanation regarding the constitutional dollar theory. And on one page, it had his income stated and his constitutional dollars, but it had his deductions in U.S. dollars. There was not enough information in that document to calculate the Selgas' actual tax burden, and it was not signed under penalty of perjury. Finally, and certainly Mr. Becraft has pointed to this, as the Selgas' power of attorney, Green stonewalled the revenue officer, Daniel, who was assigned in 2014, I believe, to collect the taxes and refused to return his phone calls, continued asking for more information just to delay the process. Now, all this time, Green knew full well that the Selgas' owed taxes because he had represented them in tax court, and he had been, at least if not representing before the court, he had entered an appearance in all the cases. So he knew that the Selgas' theories on why they didn't owe taxes had been rejected by the tax court. But rather than refute this mountain of evidence against him, Green attempts to distract the court with unnecessary and incorrect jury instructions, and by advancing an unsound argument, he knows the court has already rejected. Green argues in issue two that the district court should have advised the jury about what did not constitute a conspiracy to defraud, or what he called a Haga defense. And that is that conduct causing only incidental or inadvertent interference or purely external contact with the IRS could not constitute a conspiracy to defraud. However, the evidence did not support giving this instruction, even if Mr. Green and Mr. Selgas had brought it to the court's attention. Green did not inadvertently conceal Selgas' income in his IOTAS, or incidentally assist in filing the false partnership return for my mail. And Green admits in his reply that the frivolous 2005 tax statement did more than make external contact with the IRS. The district court did not err at all by using the pattern jury instruction approved by this court. Green's second issue fails the first prong of plain error. In his third issue, and I believe this is what Mr. Becraft was focusing on primarily in his argument, Green argues that the district court plainly erred by not giving Selgas' instructions purporting to describe the IRS's authority to ascertain, compute, assess, and collect income taxes. Number 10 regarding ascertainment is an incorrect statement of the law. The IRS has more than two lawful methods for ascertaining taxes. Number 11 describing computation as arithmetic is unnecessary. And as a description of the IRS's authority to compute taxes, it's misleading. Number 12 purporting to define assessment as a mechanical process is an incorrect statement of the IRS's authority, likely to mislead and confuse the jury. And number 13 regarding the IRS's authority to collect taxes, this instruction described the civil functions of the IRS, and it was calculated to mislead and confuse the jury. Finally, Green argues that the district court plainly erred by omitting an instruction explaining a beard return. This instruction was also unsupported by the evidence, which proved the Selgas' didn't file a beard return. The statement wasn't even signed under penalties of perjury. This court has directly rejected Green's and Selgas' currency theory and the MyMail case in 2012. But here we are 10 years later, and Green is still making the same arguments. He provides no evidence to show error, much less controlling authority, showing clear, obvious error that affected his substantial rights and impugned the fairness, integrity, or public reputation of judicial proceedings. And that is why the United States asked this court to affirm Green's conviction for conspiracy to defraud the IRS. If your honors have no further questions, if you do, I'm happy to answer them. Thank you. Thank you. Yes, your honor, briefly. She makes the argument that there was collection activity starting before 2005. Well, the indictment of this case deals with events starting in 2005, long before Johnny Green even met Selgas. And that happened in 2005. So there can't be any conspiracy before they even meet. That's point number one. Now, point number two, you know, she makes this point about the tax statements. You know, I think it's real important for the court to know that in 1877, the Supreme Court in the case of Thompson v. Butler said, a coin dollar is worth no more for the purposes of tender and payment of an ordinary debt than a note dollar. The law has not made the note a standard of value any more than the coin. Now, it's an unreported, unpublished case, but this circuit in the Cromie case cited in my brief, you know, agreed that, you know, there isn't any difference between a Federal Reserve note and a coin. Now, in 1985, the Supreme Court came along and amended 31 United States Code section 5112A. And when you read that subsection 5112, you know, Congress comes along and makes the coins of the United States that it prints, coins, a legal tender. And, you know, that's that's exactly what in 2005, when this case was settled involving the Congress and they got money, a time service was paid with these legal tender coins. And it was a whole bunch of them that, you know, had had only if you look at the coins, it says $10 on the back. That's exactly what he put on his form. You know, I think it's about $178,000 is the face value of those coins. And that's what he put on that 2005 tax statement. That's point number one that I want to make. But I want to direct the court's attention to, you know, this court decided the Porter case. And the way I read the Porter case is, hey, there's got to be a direct interference with the government agency's function. And in a case called United States against America, 1989 case from the Sixth Circuit, which I have cited in my brief, the court said a charge of conspiracy to defraud will not lie where there is no positive obstruction of a governmental program. And they rely upon the Porter case. And that conclusion is the same conclusion I read when I read the Porter case. And so in this in this case, you know, you have the indictment comes along and says, well, these functions are we're a bridge, you know, based on the facts we allege in the indictment and prove at trial. Now, when you sit down and you take a look at the facts proved, we're not we're not talking about abridging the tax court. We're not talking about, you know, anything else. We're taught that there's a specific charge in the indictment. It's the IRS. And the IRS must depend upon statutes passed by Congress that authorizes functions. And this indictment, as all these conspiracies and fraud cases charged involve four functions of the IRS. Now, it's been my experience in defending these cases that, you know, even the prosecutors and defense attorneys, you know, look at this thing as being broad and gray and ill-defined, when in fact it's not. And, you know, we've got some parameters on what a conspiracy to fraud is from the precedence in this circuit. And so I maintain that that instruction, I think it's issue number one, you know, where that describes the defenses to a conspiracy to fraud. You know, when you read all those cases cited and the authority for that instruction, you know, that instruction summarizes those cases which are defenses to a conspiracy to fraud. And so it's clear to me, even though in practice, you know, people don't descend to this particular, a conspiracy to fraud involving the abridgment of an agency's functions. The jury must be informed. Well, here's the statutory foundation for this agency to perform these functions. And if the jury doesn't know that, then how can they tell whether or not a particular act abridged to function? And that's what these requests and instructions sought. And regrettably, they were overlooked. Nobody made an argument about them. And so that's the reason why I maintained that it is plain error. But, you know, I do cite in my reply brief a number of cases, including one from the Fifth Circuit, you know, where, you know, a defense could have been assertive, but wasn't. Nobody made an argument about it. But, you know, on appeal from a conviction, you know, the defendant comes along and says, well, I had this defense over here. That's a big argument to a close, McCain. Thank you, Your Honor. Thank you, Your Honor. Thank you, counsel. This case will be submitted to opinion as soon as possible. Assuming we can back out.